¶ 1. John W. Hall, Jr., appeals the decision of the Lauderdale County Chancery Court awarding William E. Dillard, Sr., $12,857. This figure represents half of the $25,714 in a retirement account in Hall's name paid for by Mississippi Controls, Inc., over a period of September 1, 1986 through January 31, 1996. Hall raises the following issues in this appeal: (1) whether the claim is a derivative action for an alleged breach of fiduciary duty or an unwritten contract for employment, (2) whether the trial court applied the wrong standard of review, (3) whether the trial court applied the wrong statute of limitations, (4) whether the trial court has the authority to toll or disregard the statute of limitations, (5) whether the claim asserted by Dillard is an obligation of Mississippi Controls, Inc. or of Hall and the consequences of that obligation, (6) whether the trial court erroneously made an adjustment to the retirement accounts, (7) whether the trial court failed to apply the doctrine of laches, (8) whether the trial court abused its discretion in refusing to take judicial notice of Hall's compilation of data pursuant to M.R.E. 1006, and (9) whether the trial court failed to award to Hall an offset of one-half the gross profits from the Meridian office of Mississippi Controls, Inc. Finding error, we reverse and render.
 FACTS
¶ 2. On October 26, 1995, Hall filed a complaint for declaratory judgment in the Lauderdale County Chancery Court against William E. Dillard, Sr., Dillard Hall, Inc., (DHI) and Mississippi Control, Inc., (MCI). An answer, defenses, and a counter complaint were filed by Dillard and the two corporations on November 27, 1995. Hall sought to dissolve MCI and DHI, each owned equally by Hall and Dillard.
¶ 3. On January 1, 1996, Hall filed a motion for temporary relief. On February *Page 385 
5, 1996, Dillard, MCI, and DHI filed an answer and defenses to this motion for temporary relief and a counter motion for temporary relief. On February 20, 1996, the trial court conducted a hearing to determine the status of the ongoing corporations pending their dissolution. In its memorandum opinion and order, the court found as undisputed that Hall and Dillard were each fifty percent owners of MCI and DHI. The court acknowledged that the corporations were engaged in ongoing business matters and that it would be in the best interest of the corporations for those business matters to continue.
¶ 4. The parties were seeking a judicial dissolution of the two corporations under Mississippi Code Annotated Section 79-4-14.30
with an equitable dissolution of the assets. The parties attempted to agree on a valuation of the assets; however, an irreconcilable distrust existed between them.
¶ 5. On March 19, 1996, the parties reached a stipulation of partial settlement agreement. This began the process of equitably dividing the two corporations between Hall and Dillard with each stockholder receiving fifty percent of the assets of both corporations and fifty percent of the corporations themselves. Through the terms of this settlement agreement, the parties acknowledged that certain assets, liabilities, profits, losses, equipment, and other assets and liabilities of the two corporations would be equally divided between Hall and Dillard. The end result of this settlement agreement would be that Hall would be the sole owner of DHI and Dillard would be the sole owner of MCI with both corporations having equal assets and liabilities.
¶ 6. The parties did not completely agree on the division of all of the assets of the respective corporations. They acknowledged that three issues remained unresolved. Hall and Dillard submitted testimony, evidence, and arguments on these issues and agreed to be bound by the court's ruling. The stipulation of partial settlement agreement was amended and changed to reflect these were the only remaining issues. On December 16, 1996, the court entered an agreed order that acknowledged these issues as the only unresolved issues.
¶ 7. On April 23, 1997, a trial was held again in this matter. The chancellor announced at the commencement of the hearing that the matter was before the court pursuant to the agreed order. Hall announced, and the court recognized, that the first two of the three unresolved issues were being withdrawn. The sole remaining disputed issue was whether or not Dillard was entitled to an adjustment for the retirement account funds that were in Hall's name.
¶ 8. Hall also sought to dictate into the record affirmative defenses to the remaining issue of the retirement accounts. The court allowed Hall to enter the affirmative defenses of statute of frauds, statute of limitations, laches, and offset into the record. Hall also asked the court to take judicial notice of a compilation of data that was previously produced at the temporary hearing. The court declined to take notice of the data compilation pursuant to M.R.E. 201. Thereafter, a trial was conducted on the sole issue of whether or not an adjustment should be made concerning retirement accounts. At the close of testimony, additional information was needed from the Plumbers and Pipe Fitters National Pension Fund. This information was obtained, stipulated to by the parties, and reduced to a writing. Thereafter, the court entered a memorandum opinion on September 2, 1997, equitably dividing the retirement accounts.
¶ 9. On September 12, 1997, Hall filed a motion pursuant to Mississippi Rules of Civil Procedure Rule 52(b) and Rule 59 seeking post judgment relief. On October 8, 1997, an order was entered overruling these motions. Feeling aggrieved, Hall perfected this appeal. *Page 386 
 DISCUSSION STANDARD OF REVIEW
¶ 10. The standard for appellate review of a chancellor's decision is whether the chancellor utilized a manifestly wrong or an erroneous legal standard. Pannell v. Guess, 671 So.2d 1310, 1313 (Miss. 1996). We must review questions of law de novo, and we will reverse for erroneous interpretations or applications of the law. Id.
I. WHETHER THE CLAIM IS A DERIVATIVE ACTION FOR AN ALLEGED BREACHOF FIDUCIARY DUTY OR AN UNWRITTEN CONTRACT FOR EMPLOYMENT
¶ 11. A closely held corporation is defined as a corporation having fifty or fewer shareholders where the management operates in an informal manner akin to a partnership. Fought v. Morris,543 So.2d 167, 169 (Miss. 1989). Directors and officers of a corporation stand in a fiduciary relationship to the corporation and its stockholders. Fought, 543 So.2d at 171. Among these are the duties: "to exercise the utmost good faith and loyalty in discharge of the corporate office," Id., "to exercise utmost good faith and loyalty in dealing with corporate property; and to repay the corporation for any illegal diversions of corporate assets for which they may have participated." Gibson v. Manuel,534 So.2d 199, 201-02 (Miss. 1988). Furthermore, stockholders of close corporations "must bear toward each other the same relationship of trust and confidence which prevails in partnerships, rather than resort to statutory defenses." Id.
¶ 12. When a stockholder charges an officer or director with a breach of his fiduciary duty of fair dealing to the corporation, the violation is the duty owed to the corporation, and only derivatively to the stockholder. Derouen v. Murray,604 So.2d 1086, 1091 (Miss. 1992). A derivative action is an asset of the corporation that the corporation deals with as any other corporate asset. Id. A derivative action may be brought for the benefit of a shareholder where the defendant officer or director used his position improperly to obtain a benefit for himself as a shareholder to the exclusion of other shareholders similarly situated. Id. at 1092.
¶ 13. This action was commenced pursuant to Mississippi Code Annotated Section 79-4-14.30 (Rev. 1996).[1] Additionally, Mississippi Code Annotated Section 79-4-14.34 (Rev. 1994)[2] sets forth the inherent equity powers of the court to fashion alternative remedies to judicial dissolution of corporations. M.R.C.P. 16 authorizes pretrial conferences and provides for the entry of pretrial orders. M.R.C.P. 16 also states that if such an order is entered it "shall control the subsequent course of the action unless modified." M.R.C.P. 16, cmt.
¶ 14. On December 16, 1996, the court entered an order akin to a pretrial order contemplated under Mississippi Rule of Civil Procedure 16. Therefore, the chancery court's order amended the pleadings and limited the issues for trial to those that were not disposed of by agreement of the parties. Further, the parties, by their agreed stipulation, and the agreed order of *Page 387 
December 16, 1996, which was ratified and approved, executed a document that complied with the provisions of Mississippi Rule of Civil Procedure 16. Thereafter, the only issue before the court was whether or not Dillard presented a claim for adjustment of the retirement accounts.
¶ 15. In the only issue before the chancellor, Dillard sought an adjustment to the purchase price of MCI for the retirement payments made on behalf of Hall to the Plumbers and Pipefitters National Pension Fund. Dillard claims that he is entitled to direct payments for all amounts paid on behalf of Hall, regardless of the nature of the payments, the recipient, or the current status of such funds.
¶ 16. The proof before the chancellor showed no improper action on behalf of Hall regarding corporate assets, and no claim of right to any recovery by MCI against Hall. The true nature of Dillard's claim is that he seeks reimbursement as an adjustment to the purchase price of MCI for the retirement payments made on behalf of Hall to the Plumbers and Pipefitters National Pension Fund. Since this claim is for reimbursement based on the amounts paid on behalf of Hall, it is not a derivative action but an action on an unwritten contract for employment. Section 15-1-29 (rev. 1995)[3], actions on unwritten contracts of employment, applies to traditional employer-employee situations, as well as the benefits claimed to be due thereunder. Fawer v. Evans, 627 So.2d 829, 831 (Miss. 1993). Thus, Dillard's claim is sounded under an unwritten contract for employment, and his right to recover was only against MCI.
II. WHETHER THE TRIAL COURT APPLIED THE WRONG STANDARD OF REVIEW
III. WHETHER THE TRIAL COURT APPLIED THE WRONG STATUTE OFLIMITATIONS
IV. WHETHER THE TRIAL COURT HAS THE AUTHORITY TO TOLL OR DISREGARDTHE STATUTE OF LIMITATIONS
¶ 17. If a claim is sounded on an unwritten contract for employment, the applicable statute of limitations would be one year from the date of the filing of the counterclaim. Miss. Code Ann. Section 15-1-29 (Rev. 1995). The provisions of the statute of limitations establishing the time for commencement of a civil action in the courts of common law is the same as in the courts of equity for any cause of action. Miss. Code Ann. § 15-1-77 (Rev. 1995).
¶ 18. On September 2, 1997, the chancellor entered a memorandum opinion which Hall claims provided no explanation for disregarding the statute of limitations. Thereafter, Hall filed Mississippi Rule of Civil Procedure 52(b) and 59 motions. Again, Hall claims that Dillard did not assert his claim for retirement benefits until the March 19, 1996 filing of the stipulation of partial settlement. Therefore, Hall claims that any retirement benefits allegedly due to Dillard from MCI one year or more prior to March 19, 1996 are time barred.
¶ 19. The statute of limitations was asserted by Hall as an affirmative defense to Dillard's counterclaim. The Mississippi Supreme Court stated in Gulf Nat'l Bank v. King, 362 So.2d 1253, 1255 (Miss. 1978) that when a defendant pleads a statute of limitations as a defense and shows that the suit is thereby barred, he has met this burden of proof. Where the plaintiff asserts that his case is not barred by the statute of limitations, the burden is on him *Page 388 
to show some legal or equitable basis for avoiding such period of limitations. Id. By his own admission, Dillard was aware from August 1986 forward that payments were being made to the Plumbers Pipefitters National Pension Fund on Hall's behalf. However, Dillard did not take any legal action against Mississippi Control, Inc. or Hall for reimbursement of half the retirement benefits until the execution of the stipulation of partial settlement. As stated in Knox Glass Bottle Co. v. C. R. Underwood,228 Miss. 699, 89 So.2d 799, 816 (1956), "a corporation or its stockholders may by their acts be estopped to question the transaction."
¶ 20. Here, Dillard never alleged that Hall fraudulently concealed any misdeeds that would allow Dillard to request a tolling of the statute of limitations pursuant to Miss. Code Ann. § 15-1-67 and the record indicates that Dillard knew of each payment to the Plumbers Pipefitters National Pension Fund on behalf of Hall. Dillard ratified all of the corporations' actions including salaries and bonuses through his approval of the corporations' annual minutes. Additionally, Dillard was never prohibited by law, or restrained or enjoined by the order, decree or process of any court of the state from commencing or prosecuting any action or remedy against Hall or either of the corporations for any grievance he may have had. Therefore, the trial court could not have utilized the authority of Miss. Code Ann. § 15-1-67 to toll the applicable statute of limitations. Consequently, the utilization by the trial court of an erroneous standard is reversible error.
¶ 21. In the September 2, 1997 memorandum opinion and the October 8, 1997 order, the chancellor did not state specific reasons for not applying the statute of limitations found in Miss. Code Ann. §§ 15-1-29 or 15-1-49. Miss. Code Ann. § 79-4-14.34 does not authorize the tolling of the statute of limitations in a case such as the one sub judice. Since this claim is time barred, Dillard could only use this statute to divide the assets and liabilities of the corporations before the chancery court. We find these assignments of error to be well taken.
V. WHETHER THE CLAIM ASSERTED BY DILLARD IS AN OBLIGATION OFMISSISSIPPI CONTROLS, INC., OR OF HALL, AND THE CONSEQUENCES OFTHAT OBLIGATION
¶ 22. The Statute of Frauds, Mississippi Code Annotated § 15-3-1[4]
(Rev. 1995), contemplates situations between parties wherein a gratuitous promise by a third party is made to pay a creditor for the debts of another. Carolina Transformer Co., Inc. v.Anderson, 341 So.2d 1327, 1329 (Miss. 1977). The supreme court reaffirmed Mississippi's position regarding the statute of frauds stating:
 The principal purpose of the Statute of Frauds, Miss. Code Ann. § 15-3-1 (1972) is to require the contracting parties to reduce to writing the specific terms of their contract, and avoid dependence on the imperfect memory of the contracting parties, after the passage of time, as to what they actually agreed to do some time in the past.
Walters v. Patterson, 531 So.2d 581, 584 (Miss. 1988) (citingSharpsburg Farms, Inc. v. Williams, 363 So.2d 1350, 1354 (Miss. 1978)).
¶ 23. Since Dillard's claim is based upon an unwritten contract for employment benefits, instead of a derivative corporate action against Hall for an alleged breach of fiduciary duty, any money owed to Dillard is an obligation of MCI and not Hall. Dillard sought no affirmative relief from MCI, and he failed to present any written agreement from Hall whereby Hall *Page 389 
agreed to personally assume the obligations of MCI. Section 15-3-1, the Mississippi Statute of Frauds, prohibits the bringing of any action seeking to charge an individual with the obligation of answering the debt of another, unless in such circumstances the promise or agreement be reduced to writing and signed by the parties to be charged therewith. Therefore, since Hall did not sign any written agreement assuming the obligations of MCI for retirement benefits claimed by Dillard, and since Dillard expressly agreed to assume the obligations of MCI from and after the date of the stipulation of partial settlement, Dillard's claim against Hall for retirement benefits must be dismissed.
¶ 24. The chancellor was manifestly wrong and clearly erroneous in granting Dillard a judgment for adjustments on the retirement account where the accounts were a corporate obligation of MCI and which Hall neither agreed to pay nor assumed by any written document. Therefore, this assignment of error is well taken.
VI. WHETHER THE TRIAL COURT ERRONEOUSLY MADE AN ADJUSTMENT TO THERETIREMENT ACCOUNTS
VII. WHETHER THE TRIAL COURT FAILED TO APPLY THE DOCTRINE OFLACHES
¶ 25. The Mississippi Supreme Court addressed the subject of laches in Twin States Realty Co. v. Kilpatrick, 199 Miss. 545, 553, 26 So.2d 356, 358 (Miss. 1946):
 There is no hard and fast rule as to what constitutes laches. If there has been unreasonable delay in asserting claims or if, knowing his rights, a party does not seasonably avail himself of means at hand for their enforcement, but suffers his adversary to incur expense or enter into obligations or otherwise change his position, or in any way by inaction lulls suspicion of his demands to the harm of the other, or if there has been actual or passive acquiescence in the performance of the act complained of, then equity and good conscience to enforce such rights when a defendant has been led to suppose by the word [or silence, or conduct] of the plaintiff that there was no objection to his operations.
¶ 26. Here, both Dillard and MCI acquiesced, ratified, and approved the payments on behalf of Hall to the Plumbers Pipefitters National Pension Fund. "The right to question the dealings of officers or directors with the corporation property may be lost by ratification or acquiescence, and such right to question the dealings of officers or directors with the corporation property may be lost by estoppel, or by laches. The corporation or its stockholders may, by their acts, be estopped to question the transaction." Knox Glass Bottle Co., 89 So.2d at 816 (citations omitted).
¶ 27. Since Dillard's claim is sounded on an unwritten contract for employment, then eight years and five months of the nine year and five month period covered within the claim would be barred by the applicable one year statute of limitations. Equitable principles recognize that Dillard's failure to act within a reasonable period of time constitutes a lack of diligence. The award to Dillard of reimbursement for the retirement benefits is barred by the applicable statute of limitations. Therefore, it constitutes a misapplication and abuse of the chancery court's authority, making it reversible error. Since Dillard's claims are barred by the doctrine of laches, this assignment of error is well taken.
VIII. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TOTAKE JUDICIAL NOTICE OF HALL'S COMPILATION OF DATA PURSUANT TO MRE1006
¶ 28. Prior to the temporary hearing on February 16, 1996, Hall filed with the court his Mississippi Rule of Evidence 1006 notice of compilation of data which contained information regarding: jobs bid but not completed after October 1995; jobs bid, received and completed after October *Page 390 
1995; sales cash receipts/payouts comparison between the Meridian and Jackson offices of Mississippi Controls, Inc. for 1995; and sales and profit comparison between the Meridian and Jackson offices of Mississippi Control, Inc. for the period of 1991 through 1995. During the temporary hearing, the chancellor took judicial notice of the compilation of data and it was introduced into evidence. However, on March 16, 1996, the parties entered an agreed stipulation of facts and issues. This agreed stipulation was ratified and approved by agreement pursuant to the December 1996 order. Contained in the stipulation was a division of the assets and liabilities which was agreed to by Hall and Dillard.
¶ 29. Mississippi Rule of Evidence 1006 states that:
 The content of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.
Under Mississippi Rule of Evidence 1006, "a summary of the voluminous material is sufficient as admissible evidence." M.R.E. cmt. The standard by which the Mississippi Supreme Court reviews a trial judge's decision to admit evidence was reiterated in Stewartv. Stewart, 645 So.2d 1319, 1320 (Miss. 1994):
 The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused. . . . Unless the trial judge's discretion is so abused as to be prejudicial to a party, this court will not reverse his ruling.
¶ 30. Mississippi Rule of Evidence 201 states in part that:
 (b) Kinds of Fact. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be requested.
¶ 31. Pursuant to Mississippi Rules of Evidence 401 and 402, the chancellor was faced with a relevancy question: whether the gross profits had any relevant bearing upon the issue of adjustment for retirement benefits of Hall for which Dillard had not received a corresponding benefit. The Mississippi Supreme Court held inHendry Const. Co., Inc. v. Bank of Hattiesburg, 562 So.2d 100
(Miss. 1990) that a court did not commit error in excluding testimony as to matters which do not relate to the issue between the parties where it is not relevant to the issue. Under Mississippi Rule 201, the chancellor declined to take judicial notice of the compilation of data entered at the temporary hearing. Since Hall failed to establish any relevant connection between the issue of gross profits and the issue of retirement funds being paid to Dillard, the chancellor properly excluded the evidence. Furthermore, it is within the chancellor's sole discretion as to whether he will take judicial notice of adjudicative facts. Therefore, this assignment of error is without merit.
IX. WHETHER THE TRIAL COURT FAILED TO AWARD TO HALL AN OFFSET OF ONE-HALF THE GROSS PROFITS FROM THE MERIDIAN OFFICE OF MISSISSIPPI CONTROLS, INC.
¶ 32. The trial court granted an adjustment for retirement accounts in what it determined to be a balancing of the equities between Dillard and Hall. However, absent some claim of wrongdoing by Hall, Dillard has no claim for a "balancing of the equities." Hall had no claim for an adjustment for the profits he generated for the business while this action was pending unless he could show some malfeasance or misfeasance on Dillard's part. From the *Page 391 
record now before us, such has been neither alleged nor proven. Accordingly, we reverse and render.
 CONCLUSION
¶ 33. Dillard's claim is sounded under an unwritten contract for employment, and his right to recover was solely against MCI. We find, however, that Dillard's claim to recovery was time barred and that he could use Miss. Code Ann. Section 79-4-13.34 only to divide the assets and liabilities of the corporations before the chancery court. The chancellor further erred in granting Dillard an adjustment on Hall's retirement account, where the accounts were a corporate obligation of MCI and Hall neither agreed to pay nor assumed the obligation to pay pursuant to any written document. The award to Dillard of reimbursement of the retirement benefits further is barred by the applicable statute of limitations. The chancellor correctly refused, however, to take judicial notice of Hall's compilation of data. We therefore reverse and render the order of the Lauderdale County Chancery Court.
¶ 34. THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT ISREVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE TAXED TO THEAPPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P., JJ., BRIDGES, COLEMAN,IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
[1] Grounds for judicial dissolution are stated in part in Section 79-4-14.30:
(2) In a proceeding by a shareholder if it is established that:
(i) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock. . . .
[2] Section 79-4-14.34 states in pertinent part that:
(d) If the parties are unable to reach an agreement . . . the court upon application of any party, shall . . . determine the fair value of the petitioner's shares as of the day before the date on which the petition . . . was filed or as of such other date as the court deems appropriate under the circumstances.
[3] Section 15-1-29 (Rev. 1995), limitations applicable to actions on accounts and unwritten contracts, states, in part that:
[A]ctions on an open account or account stated not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three (3) years next after the cause of such action accrued, and not after, except that an action based on an unwritten contract of employment shall be commenced within one (1) year after the cause of such action accrued, and not after.
[4] Section 15-3-1, certain contracts to be in writing, states in part that:
An action shall not be brought whereby to charge a defendant or other party:
(a) upon any special promise to answer for the debt or default or miscarriage of another person. . . .