Mr. Justice Thacher
delivered the opinion of the court.
This is an action of covenant upon the following instrument, “ Know all men by these presents, that I, Lydia Whitehead, have this day employed Richard W. Webber as my counsel and attorney at law, to claim for me ten slaves, now in the jail of Franklin county, levied on by virtue of an attachment issued, returnable to the next May term of the circuit court of said county, against James Hutchins. Now if the said Webber shall succeed in said suit, I bind myself to transfer and convey to said Webber, my right, title, and interest of, in and to slave Peter, one of said slaves, but I am not to warrant the title of said slave, as his fee, in addition to a note I have this day given him. As witness my hand and seal, this 22d day of March, 1841.
Lydia + Whitehead. [Seal.]”
The jury found a verdict for the plaintiff below, and assessed the damages to $400; whereupon there was a motion for a new trial, on the ground that the finding was contrary to the law, the evidence, and the instructions of the court. All the evidence and the instructions of the court are legitimately set forth in the record, and thus all the merits of the case, both of law and fact, are presented for the review of this court.
The circumstances, as they appeared upon the trial, were these: Burke, Watt & Co., at their suit against James W. B. Hutchins, issued an attachment and caused it to be executed upon certain slaves, among the rest the slave Peter, in the above instrument. At the time, the slaves were in the possession of Mrs. Whitehead. The said slave Peter had been purchased by the defendant in the attachment in the name of Mrs. Whitehead, but with his own funds, and had been delivered to her by Hutchins, as he admitted, with a view to screen the slave from subjection to the payment of the debt for which the attachment *108 was sued out. Such was her title, and after the attachment was executed, she declined to take the necessary preliminary steps to enforce a trial of her claim to the slaves, but joined in a mortgage of the slaves to Burke, Watt & Co., which was executed in pursuance of a compromise of the attachment suit, but this compromise was entered into and completed without the consent or approbation of Webber.
In this state of things, the first, second, sixth, and seventh charges given by the circuit court upon the trial, were erroneous. They evidently misled the jury, because they related to a de-fence to be made by Webber to the attachment suit. The condition of the covenant was, that Webber should prosecute Mrs. Whitehead’s claim to the slaves, which can refer only to a prosecution of her claim by trial of the right of property under the statute. Besides, grant that a successful defence of the attachment suit would restore the slaves to Mrs. Whitehead’s possession, it would still be no vindication of her title, nor would it protect the slaves from another levy at the suit of the same or other creditors of Hutchins; and, again, Mrs. Whitehead had no authority to engage Webber’s services in the attachment suit, nor was' he employed by Hutchins. The attachment suit and the trial of the right of property are two separate suits, and the condition was to prosecute successfully the latter, and not to defend the former.
And some'of the charges, given to the defendant below, in view of the evidence, likewise were calculated to mislead the jury. The court in effect so charged the juryy that they evidently conceived that the value of the slave Peter should be the criterion of damages in the event of a finding for Webber. Now, it is not the value of the slave Peter, “ the object in controversy,” that is the proper criterion of damages, but the value of Mrs. Whitehead’s “right, title, and interest” in him. This was the true “object in controversy.” It was so much and no more, that she covenanted to convey to Webber, for she expressly declined to warrant even her own title to him. She had but a naked legal title, tainted with fraud, according to Hutchins’s testimony. The damages should, therefore, have been but nom *109 inal; whereas the jury found the probable value of the slave at the time of trial. The verdict was clearly illegal, and contrary to evidence.
Judgment reversed, and new trial awarded.